### EDWARD C. HEGELER
#### v.
### THE FIRST NATIONAL BANK OF PERU, ILLINOIS.

*Bill to Set Aside Judgment by Confession—Fraudulent Concealment—
Estoppel* in Pais.

The mere failure of a creditor to make public his possession of judgment
notes given to him by his debtor, is not fraudulent, where he does nothing
to persuade or influence others to give the debtor credit.

[Opinion filed December 8, 1888.]

In error to the Circuit Court of La Salle County; the Hon. Dorrance Dibell, Judge, presiding.

Messrs. Bull, Strawn & Ruger, for plaintiff in error.

A deed not at first fraudulent may become so by being concealed or not pursued, if creditors are thereby induced to give credit to the grantor. Hildreth v. Sands, 2 Johns. Ch. 35; Perine v. Dunn, 3 Johns. Ch. 508.

If an instrument is made with the intent to hinder and delay creditors, it is not purged because the creditor may also have had some other purpose in view.· Reid v. Noxon, 48 Ill. 323; Merry v. Bostwick, 13 Ill. 398.

Kerr on Fraud and Mistake, p. 42, says : " Fraud, in contemplation of a court of equity, may be said to include, properly, all acts, omissions and *concealments* * * * by which an undue or unconscientious advantage is taken of another." Citing Belcher v. Belcher, 10 Yerg. 121; Kennedy v. Kennedy, 2 Ala. 571; Gale v. Gale, 19 Barb. 249.

And on page 43: "Fraud may be collected and inferred from the matters and circumstances of the transaction as being an imposition and cheat on other persons not parties to the transaction." Citing Jones v. Bolles, 9 Wall. 364; Phelen v. Clark, 19 Conn. 421.

In Bank of U. S. v. Housman, 6 Paige, 534, it is likewise held that a deed otherwise *bona fide* becomes void, if concealed, and others have been induced to trust the grantor, upon the belief that he was owner of the property conveyed.

In Hildreth v. Sands, 2 Johns. Ch. 48, the court holds that "a deed not fraudulent at first may afterward become so by being concealed, or not pursued, by means of which creditors have been drawn in to lend their money."

In Scrivener v. Scrivener, 7 B. Monroe, 374, the facts were that a deed was withheld from the records for some time after its execution, until the credit of the grantor (founded in part on the apparent ownership of the land) was exhausted, when the deed was put upon record. The court says: " The deed has thus been, evidently, a means of deceiving and defrauding others, and there is some reason to infer that it was originally

so intended.   At any rate, it has, by being so long kept secret,
and finally put upon record, after the grantor became embar_
rassed,   *   *  ·*   been made the instrument of fraud against
the creditors of the grantor."

In Gregg v. Martin, 12 Allen, 498, the facts were that the
principal defendant had assigned, openly and for a valuable
consideration, the wages he expected to earn under an exist_
ing contract.   They were attached under trustee process by
subsequent creditors, and the court held that "an assignment
of future wages to be earned under an existing contract, if
made for the purpose of preventing them from being attached
by trustee process, is void; and the fact that it was made
openly and for a good consideration is immaterial."   Citing
Boylen v. Leonard, 2 Allen, 407; Clapp v. Leatherbee, 18
Pick. 131, 138; Parkman v. Welch, 19 Id. 231, 237; Kimball
v. Thompson, 4 Cush. 441.

In the case at bar the judgment notes were kept concealed
for the express purpose of sustaining the credit of the glass
company, and thereby enabling it to obtain credit, borrow
money, etc., and then to be used without a moment's warning,
and to the injury and prejudice of such subsequent creditors.

Mr. G. S. ELDRIDGE, for defendant in error.

LACEY, P. J.   This was a bill in equity filed by plaintiff in
error against defendant in error, for the purpose of setting
aside certain judgments by confession in favor of defendant in
error against the De Steiger Glass Company.   The statement
.of the facts and pleadings, as far as necessary, is about as
follows:

On December 22, 1882, the First National Bank of Peru, a
corporation doing business under the national banking act,
obtained two judgments by confession in the Circuit Court of
La Salle county against the De Steiger Glass Company, the
first for $35,050 and costs, of which sum $50 was attorney's
fees, and the second for $5,325 and costs.   Upon the same day
executions were issued upon said judgment to the sheriff of
La Salle county, and by him levied upon a large amount of

real estate as the property of the De Steiger Glass Company, and the same advertised for sale.

On December 26, 1882, the La Salle National Bank recovered a judgment by confession in the same court against the De Steiger Glass Company, for $7,437.34 and costs, and an execution thereon was issued that day.

On January 1, 1883, a judgment by confession was obtained by Edward C. Hegeler against the De Steiger Glass Company in the same court for $14,500 and costs, and an execution was issued thereon on the same day to the same sheriff, and levied on real and personal property; and the same was returned unsatisfied, but with the levy not released, after the commencement of this suit.

On January 11, 1883, the La Salle Coal Mining Company recovered a judgment by confession in the same court against the De Steiger Glass Company for $2,945.17.

Numerous other judgments against the De Steiger Glass Company followed in circuit and justice courts, the details and amounts of which need not now be stated.

On June 13, 1883, the First National Bank of Peru recovered a third judgment in La Salle County Circuit Court against the De Steiger Glass Company for $18,137.47 and costs, by summons and default.

Meantime on April 4, 1883, a few days before the date fixed for the sale of the real estate of the De Steiger Glass Company on the executions of the First National Bank of Peru, Mr. Hegeler filed his original bill in this case, attacking the validity of the judgment so obtained against the De Steiger Glass Company by the First National Bank of Peru, and asking that they and the executions and levies thereunder be set aside, and the property of the De Steiger Glass Company distributed among all the creditors of that company. The bill was filed in behalf of all such creditors.

Service was had on the First National Bank of Peru before the day fixed for the sheriff's sale; and at that sale a notice was read on behalf of Mr. Hegeler, stating the filing of the bill and the object sought by it. But no injunction having been obtained the First National Bank of Peru caused the

sheriff to proceed and sell the several tracts levied upon, and the bank became the purchaser at such price that its judgment for $35,050 was returned satisfied in full, and its judgment for $5,325 was returned satisfied to the extent of $5,290.46, leaving a little over $35 unsatisfied, besides interest. The bank has since taken out sheriff's deeds for part of the property.

The question to be decided is whether the two judgments of the defendant in error are fraudulent as to the claim of the plaintiff in error, Hegeler. The plaintiff in error is the only one who has sued out this writ of error. The date of the two notes upon which the judgments in favor of defendant in error was confessed bore date January 10, 1882, and were each due in January, 1882, and each accompanied by a power of attorney to confess judgment at any time; that the indebtedness for which the notes were given was existing long prior to the giving of these notes and the respective power of attorneys, and it is admitted that the notes were given for *bona fide* indebtedness.

It is charged in the bill at the time the notes were given that the said De Steiger Glass Works was insolvent, which was known to defendant in error; that it had cause for so believing; that just prior thereto the glass works offered to mortgage its property to the defendant in error to secure said indebtedness, but the bank refused because it would injure the credit of the said glass company and prevent it from obtaining further credit and loans, and therefore it took the notes with the power of attorney attached thereto and agreed to conceal the same, and to allow the said glass company to retain the full control of the property free from any record or known lien; that in pursuance of such agreement the defendant in error, with the intention of allowing the said glass company to obtain new and future credit elsewhere, and to defraud its creditors, did keep concealed in its possession for over eleven months, till December 22, 1882, said judgment notes, when it entered judgment thereon and took executions, and made levies as aforesaid, with express intent of defeating the just claims of appellant, etc., incurred during the period of said concealment.

It charges that in consequence of the false representations of said glass company and the fictitious credit it secured by defendant in error in allowing it to retain all its property apparently free from incumbrances, without which the plaintiff in error would not have loaned the said glass company the amount of money for which his notes were subsequently given, that the plaintiff in error loaned his money. And it is claimed that in equity the defendant in error's judgment ought to be postponed to that of plaintiff in error's. Now we think the evidence fails to show that defendant in error acted in bad faith or was wilfully trying to entrap any one into loaning the glass works money, or that it acted in such a way as to be chargeable with actual fraudulent intent.

It probably knew that the glass works were somewhat embarrassed, but thought with friendly treatment it would be able to pay its debts and come out of its embarrassments, and was willing to take the chances of losing its own debt in order to befriend its debtor.

There was no particular effort to conceal the existence of the notes and power of attorney more than defendant in error did not give it any publicity. In fact no one ever inquired of it about the existence of the notes or the standing of the glass company, and especially not the plaintiff in error. Counsel for plaintiff in error claim that there is a great distinction between the rights of prior and subsequent creditors of the debtor company, as far as the plaintiff in error's equities are concerned, he being a creditor accruing subsequently to the execution of the notes.

But we think that the distinction is more fanciful than real, and no just claim to any such vantage can be set up unless the rules of estoppel *in pais* can be applied.

Now we think that there can be no such grounds successfully urged in this or similar cases, unless there was some intent to defraud, and some action of which the plaintiff in error knew and acted on to his disadvantage, being induced thereto by defendant in error. If plaintiff in error, prior to his loaning his money to the glass company, inquired of defendant in error of the company's condition financially and

informed it he was about to make it a loan, and the defendant in error had made false statements in regard to and denied or concealed the existence of the notes, then the doctrine of estoppel might apply. But in a case like this, where nothing was done to mislead any one, except the fact of the existence of the defendant in error's own debt and notes, with power of attorney to confess judgment and the failure to make it public, we can see no grounds for applying the doctrine of estoppel.

If such should be the rule of law no creditor who conceived his debtor to be hard pressed and "shaky" would dare to give the debtor any leniency. He must make proclamation of his claims to the world and sue immediately or take the chances of being postponed to all subsequently accruing creditors. Because, as is claimed here, he would have good reason to know that his debtor might obtain a fictitious credit as a man of means, and be liable to contract debts on the strength of it, when in fact if his debts were paid or the public knew of his real condition, he would not be likely to be deceived.

As we think, the case of Field v. Ridgely, 116 Ill. 424, fully settles the law against the contention of the plaintiff in error. In that case the court uses this language, which is peculiarly applicable to the facts of this case: "We are aware of no principle outside of self-interest and prudence in business that requires the holder of a mortgage to put it on record at any particular time. By not doing so promptly he runs the risk of having it postponed to junior liens and even of losing the benefit of it altogether. As to subsequent purchasers and creditors without notice such securities take effect from the time of filing only. As to the complaint that appellees held the notes so long without giving notice of their having them, we perceive no force in it. There is no law or mercantile usage, so far as we are advised, that requires one in business to disclose the state of his accounts with his customers, and there are manifest reasons why this should not be done, except when the creditor is especially interrogated on the subject by one having a personal interest in knowing."

We think this decision covers every point urged against the

validity of plaintiff in error's judgments.   The application is
obvious.   Many of the same authorities cited in this case
were cited in that to support Field, and were by the Supreme
Court fully considered and nothing in them was found to
incline it to hold as Field's attorneys contended was the law;
and the same principle being involved here we see no reason
why the rule announced is not decisive.

This being the only error assigned the decree of the court
below is affirmed.

*Decree affirmed.*